```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-22-14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROSE GARCIA o/b/o A.A.C.,

                                    Plaintiff,                          13-cv-7783 (PKC)

          -against-                                          MEMORANDUM
                                                              AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Rose Garcia, who is not represented by counsel and is proceeding pro se,

brings this action on behalf of her infant son, A.A.C.  Garcia asserts that A.A.C. is disabled and

therefore eligible for the payment of Supplemental Social Security Income ("SSI") under Title

XVI of the Social Security Act.  In a written decision of May 16, 2012, administrative law judge

Gitel Reich (the "ALJ") denied Garcia's application, concluding that A.A.C. did not suffer from

an impairment or combination of impairments that rendered him eligible to receive SSI benefits.

(Record at 12-23.)

          Garcia commenced this action on October 30, 2013, and, pursuant to 42 U.S.C. §

405(g) and/or § 1383(c)(3), seeks review of the Commissioner's denial of benefits.  (Docket # 2.)

The Commissioner filed an Answer and the administrative record, and now seeks judgment on

the pleadings pursuant to Rule 12(c), Fed. R. Civ. P.  (Docket # 8-9, 14.)  The Commissioner

filed the motion on May 28, 2014 (Docket # 14), and Garcia has submitted no papers in

opposition.  The Court therefore considers the motion unopposed, drawing every reasonable

inference in favor of Garcia as a plaintiff proceeding pro se.

Mailed to plaintiff 10-9-14

For the reasons explained, the Court concludes that the Commissioner's decision is supported by substantial evidence and is free of legal error. The motion for judgment on the pleadings is granted.

BACKGROUND

I. Procedural History.

A.A.C. was born on July 26, 2010. (Record at 49.) On August 15, 2011, Garcia applied for SSI benefits on A.A.C.'s behalf, claiming that the child was disabled from birth due to occipital encephalocele. (Record at 49.) As described by the Commissioner, encephalocele is a disorder in which the bones of the skull do not close completely. (Def. Mem. at 1 n.1.) When it occurs, cerebral spinal fluid, brain tissue or membrane may leak through the gaps of the skull and form sac-like protrusions. (Def. Mem. at 1 n.1.) In the case of A.A.C., physicians concluded that the leakage consisted only of fibrous matter, and not brain tissue. (Record at 39.)

On September 9, 2011, Garcia completed a form titled "Questionnaire for Children Claiming SSI Benefits." (Record at 138.) She stated that A.A.C. was not in school, a special education program or receiving special counseling or tutoring. (Record at 138-39.) She also stated that he had not been tested or evaluated by government agencies. (Record at 140.) A.A.C. was taking Tylenol for pain, but no other medications. (Record at 143.) On the same day, Garcia completed a second form, titled "Function Report – Child Birth to 1st Birthday." (Record at 103.) In it, she reported that A.A.C. had no difficulties seeing or hearing, that he was capable of performing several activities involving basic physical coordination, and that he responded to sounds and motions. (Record at 104-06.) At the same time, she noted that A.A.C. was unable to engage in certain basic communications and struggled with motor skills. (Record at 105-06.)

The Social Security Administration denied Garcia's claim for benefits on October 19, 2011. (Record at 50-54.) It concluded that A.A.C.'s condition "is not disabling under our rules" because it "does not cause marked and severe functional limitations." (Record at 54.) It noted medical evidence indicating that A.A.C. underwent surgery to stabilize his condition, and that while he faced some limitations to his activities, his abilities were age appropriate in most respects. (Record at 54.)

Garcia then requested a hearing before an ALJ, which took place on May 1, 2012. (Record at 56-61, 29-48.) At the hearing, Garcia testified that A.A.C. was born with a tissue mass on his head, and that his head was larger than normal. (Record at 34-35.) She stated that the child was being monitored with ongoing MRI scans, and that he had a "delayed, like a lazy eye." (Record at 34-35.) Garcia also testified that "the pediatrician feels that he's got a little bit of a delay" in his speech development. (Record at 36, 45.)

Dr. Allan M. Rothenberg, an impartial medical expert, also testified at the hearing. (Record at 37-47.) He stated that A.A.C. had been diagnosed with hydrocephalus, but that the condition was "mild." (Record at 39.) He testified that A.A.C. had been born with a cyst on the back of his head, which was surgically removed. (Record at 39.) The cyst consisted of fibrous tissue, and no brain tissue was present in it. (Record at 39.) Rothenberg opined that the child's impairments did not rise to functional limitations eligible for SSI payments. (Record at 40-42.) Specifically, Rothenberg testified that A.A.C. had no functional limitation in his abilities to acquire and use information, attend and complete tasks, interact and relate with others, move and manipulate objects, or to attend to his self-care. (Record at 41.) He testified that, as to the impairment of A.A.C.'s health and physical well-being, A.A.C's condition was "less than mark[ed]." (Record at 41-42.)

Rothenberg noted that A.A.C.'s neurosurgeon described the child's "reflexes, and cranial nerves, and motor nerves" as "all normal." (Record at 43.) He discussed a report from A.A.C.'s treating pediatrician, who concluded that his sensory communication skills, cognitive skills, and emotional and social status were all age appropriate. (Record at 43.) Rothenberg noted evidence that A.A.C. could drink from a cup, throw a ball, scribble, and speak 10 to 15 words and walk, and opined that these activities were age appropriate. (Record at 43.)

On May 16, 2012, the ALJ issued a written decision that denied SSI payments to A.A.C. (Record at 12-23.) In reviewing the regulatory classifications for determining whether A.A.C. suffered from a severe functional limitation, see 20 C.F.R. § 416.926a(b)(1), the ALJ found that A.A.C. had no limitation in 1.) acquiring and using information, 2.) attending and completing tasks, 3.) interacting and relating with others, 4.) moving and manipulating objects or 5.) caring for himself. (Record at 18-21.) The ALJ concluded that A.A.C. required continued monitoring of his condition, but that he had a "less than marked limitation in health and physical well-being." (Record at 22.)

Garcia then requested that the Appeals Council of the Social Security Administration review the ALJ's decision. (Record at 5.) The Appeals Council denied her request for review. (Record at 1-4.) She thereafter filed this action.

II. A.A.C.'s Medical History.

The administrative record also includes the medical records of A.A.C.'s evaluations by neurologists and treating pediatricians.

On the day of the child's birth, he was administered a brain scan, which indicated that the left side of his skull was underdeveloped and that the child suffered hydrocephalus. (Record at 136-37.) Two days later, he received a CT scan. (Record at 137.)

On August 20, 2010, when he was 25 days old, A.A.C. visited Dr. William E. Whitehead, a pediatric neurosurgeon. (Record at 210-11.) Garcia stated that A.A.C. had done well since birth, had no medical problems beyond meningocele, ate well and was seldom irritable. (Record at 210.) Whitehead observed that A.A.C.'s head "was normocephalic" "with a 1.5 cm pedunculated lesion" that was "entirely skin covered." (Record at 210.)

A.A.C. made another visit to Whitehead on February 25, 2011. (Record at 212.) He received an MRI on this date. (Record at 212-13.) Whitehead observed, among other things, that A.A.C.'s head was growing faster than normal, with large ventricles, and he scheduled A.A.C. for surgery two months later. (Record at 209.)

On April 26, 2011, A.A.C. was admitted to Texas Children's Hospital for the treatment of an occipital encephalocele. (Record at 134.) A summary authored by Dr. William Humphries described A.A.C. as a nine-month-old boy with a posterior parietal encephalocele, which had been present since his birth with no change in size. (Record at 196.) Garcia informed Humphries that she observed no evidence of developmental delay in A.A.C. (Record at 196.) Whitehead then performed a procedure classified as elective encephalocele closure, and reported that the surgery occurred without complication. (Record at 196, 203-05.) Post-surgical examinations were normal, except that the sutures were reported as dry and intact, and that A.A.C. had a slight inward turning in his eyes. (Record at 206.) Garcia was told that A.A.C. should not perform strenuous head movements, and should take Tylenol for pain. (Record at 206.)

Whitehead conducted a follow-up exam on June 10, 2011. (Record at 207.) Garcia reported that A.A.C. had been eating well and had no fevers. (Record at 207.) Whitehead noted that the incision was healing well and that the tissue removed during surgery

consisted only of fibrous matter. (Record at 207.) He recommended that an MRI be administered in three months. (Record at 207.)

On August 24, 2011, Garcia took A.A.C. to Dr. Melinda C. Tenorio, a treating pediatrician. (Record at 146, 186-88.) Her examination of the child showed normal results in muscle tone, motor development, sensory examination and reflexes. (Record at 186.) Garcia told Tenorio that A.A.C was able to speak one or two words, point to desired objects, play games like peek-a-boo, wave, stand alone, walk without support and other similar tasks. (Record at 186.) Tenorio classified him as a "well baby/child," noting that he also had an upper respiratory infection, candida dermatitis, hydrocephalus as a newborn and encephalocele. (Record at 186-87.) His blood testing was normal. (Record at 187.) Tenorio recommended that A.A.C. receive an MRI, and she prescribed him nasal spray. (Record at 187.) On September 29, 2011, Tenorio completed a report for the New York State Office of Temporary and Disability Assistance concerning her treatment of A.A.C. (Record at 146-50.) It noted, among other things, that A.A.C.'s prognosis was good and that he had no developmental delays, but that he may possibly need a second surgery in the future. (Record at 146-48.)

On October 6, 2011, Dr. Caroline Collado, who shared a medical office with Tenorio, examined A.A.C. (Record at 184.) Aside from a rash, Collado identified no ongoing problems with A.A.C., and assessed him as "well baby/child exam." (Record at 184-85.) Garcia reported that the child had not been speaking, and Collado referred him to audiology and ophthalmology specialists. (Record at 185.)

On October 11, 2011, Whitehead, the surgeon who initially examined and treated A.A.C., completed a questionnaire concerning the child's condition. (Record at 151-57.) He stated that A.A.C. had no current symptoms, took no medication and had been impaired for a

- 6 -

short duration. (Record at 152-53.) He did not test A.A.C.'s fine motor skills, sensory ability or communication skills, but reported that the child had no abnormality in his gait and did not make abnormal movements. (Record at 152-54.) Clinical testing of his cranial nerves, deep tendon reflexes and sensory examinations all yielded normal results. (Record at 155-56.)

Dr. J. Randall, a state agency pediatrician, reviewed medical records and assessed A.A.C.'s abilities in an SSI questionnaire dated October 13, 2011. (Record at 158-63.) Randall checked a box indicating that the child's impairment was "severe," but did not amount to an impairment under the Commissioner's designated listings of impairments. (Record at 158.) As to those impairments, Randall concluded that A.A.C. had "no limitation" in acquiring and using information, performing tasks, interacting, moving and manipulating objects, or in self-care. (Record at 160-61.) Concerning A.A.C.'s health and well-being, the child had "less than marked" limitations. (Record at 161.)

An MRI was administered to A.A.C. at New York Presbyterian Hospital on November 28, 2011. (Record at 189-90.) The scan indicated that the child had mild hydrocephalus. (Record at 190, 215-17.)

Tenorio examined A.A.C. on December 21, 2011 and again on January 5, 2012. (Record at 182, 180.) At the December 21 visit, Garcia reported that A.A.C. had an ongoing cough, and recently had bouts of fever, vomiting and diarrhea. (Record at 182.) Tenorio diagnosed the child with an ear infection and eczema. (Record at 182.) On January 5, Tenorio examined A.A.C. for medical clearance for anesthesia and an MRI. (Record at 180-81.) Tenorio observed nasal congestion, runny nose, ear pain, sore throat and abdominal pain, but the review was otherwise normal. (Record at 180-81.)

Tenorio again examined A.A.C. on February 2, 2012, for treatment of a cold and for immunization updates.  (Record at 178.)  She diagnosed A.A.C. with an allergy.  (Record at 179.)  In a visit of March 6, 2012, she diagnosed A.A.C. as healthy and normal, except that he had psoriasis and speech delay.  (Record at 176-77, 221.)  She later cleared A.A.C. for an additional MRI.  (Record at 221.)

In a Social Security Administration questionnaire completed on March 9, 2012, Tenorio stated that she was unable to determine A.A.C.'s mental work-related abilities.  (Record at 167-69.)  In a second form dated March 9, titled "Work-Related Activities (Physical)," she noted that many categories, such as the ability to lift or carry weights, or to sit, stand and walk, were not applicable, because he was "only 19 months old."  (Record at 170-71.)  She also noted that he presently was unable to climb stairs, ramps, ladders and scaffolds, but could frequently balance, stoop and crouch.  (Record at 173.)

STANDARD OF REVIEW.

A motion to dismiss under Rule 12(c), Fed. R. Civ. P., may be granted only if the movement establishes its entitlement to judgment on the pleadings as a matter of law.  <u>Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537</u>, 47 F.3d 14, 16 (2d Cir. 1995).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).  Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  <u>Juster Assocs. v. City of Rutland, Vt.</u>, 901 F.2d 266, 269 (2d Cir. 1990) (citations omitted) (alteration

in original).

        In reviewing a denial of benefits, if the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . ."); see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). A court may not review the Commissioner's decision de novo. See Cage v. Comm'r of Soc. Servs., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).

        A court's review thus involves two levels of inquiry. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). First, the court must review "whether the Commissioner applied the correct legal standard," id., including adherence to applicable regulations, see Kohler, 546 F.3d at 265. Second, the court must decide whether the Commissioner's decision is supported by substantial evidence. Tejada, 167 F.3d at 773.

        An ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). An ALJ's factual findings supported by substantial evidence are "binding" on a district court, but "where an error of law has been made that might have affected the disposition of the case," the Court cannot simply defer to the ALJ's factual findings. Id.

        It is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." Carroll v. Sec'y of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983). "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). In particular, courts must show special deference to an

- 9 -

ALJ's credibility determinations because the ALJ had the opportunity to observe the witnesses' demeanor while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

Before deciding whether the Commissioner's determination is supported by substantial evidence, the reviewing court must first be satisfied that the claimant received "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citation and quotation marks omitted). The ALJ has an affirmative duty to fully and fairly develop an administrative record. Echeverria, 685 F.2d at 755. This duty arises, regardless of whether the claimant is represented by counsel, from the fact that "a hearing on disability benefits is a non-adversarial proceeding . . . ." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . . .'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting Perez, 77 F.3d at 47). Accordingly, "the reviewing court must make a 'searching investigation' of the record to ensure that" the ALJ protected the claimant's rights. Robinson v. Sec'y of Health and Human Servs., 733 F.2d 255, 258 (2d Cir. 1984) (citation omitted). "If the reviewing court determines that a claimant did not receive a 'fair and adequate hearing' before the ALJ, it must remand the case to the Commissioner . . . ." Watson v. Astrue, 2009 WL 6371622, at *5 (S.D.N.Y. Feb 4, 2009), adopted by 2010 WL 1645060 (S.D.N.Y. Apr. 22, 2010). "A finding of gaps in the record or need for further development of the evidence is cause for remand." Batista v. Chater, 972 F. Supp. 211, 217 (S.D.N.Y. 1997) (Sotomayor, J.) (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

SSI ELIGIBILITY FOR CHILD APPLICANTS.

The SSI program, 42 U.S.C. § 1381, et seq., provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbraith, 485 U.S. 74, 75 (1988). A person under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). "[N]o individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled." Id. § 1382c(a)(3)(C)(ii).

Pursuant to regulation, to qualify as impaired, the child must have "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). In evaluating whether a child is disabled for the purpose of SSI eligibility, the Commissioner considers whether the applicant is working or engaged in "substantial gainful activity." 20 C.F.R. § 416.924(a). If not, the Commissioner evaluates whether the child has "severe" mental or physical impairments that amount to a functional limitation. Id. The impairment must be medically determinable. Id. § 416.924(c). If the impairment is not severe, the child will not be considered disabled. Id. § 416.924(a).

The child's functional limitations are evaluated in six different categories: 1.) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self-care; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The child is considered disabled if there are "marked" limitations in two of the six categories or "extreme" in one. 20 C.F.R. § 416.926a(a). A "marked" impairment is "more than moderate" but "less than extreme." 20 C.F.R. §

416.926a(e)(2)(i).  An extreme limitation seriously interferes with a child's ability to

independently initiate, sustain or complete activities, and is the worst limitation.  20 C.F.R. §

416.926a(e)(3)(i).

DISCUSSION

        Based upon a review of the administrative record and the ALJ's decision, this

Court concludes that Garcia's claims received a full and fair hearing from the Commissioner,

and that the denial of SSI benefits was supported by substantial evidence.  The Commissioner's

denial of benefits is accordingly affirmed.

        The ALJ provided a full and fair hearing to Garcia, who was not represented by

counsel and appeared before the ALJ pro se.  See generally Echevarria, 685 F.2d at 755.  The

ALJ explained that Garcia had a right to represented by counsel or another qualified individual.

(Record at 29.)  Garcia confirmed that she understood her right to representation and that she

wished to proceed without such representation.  (Record at 30-31.)  The ALJ explained to Garcia

in clear terms that the purpose of the hearing was to determine whether A.A.C. suffered from a

medically determinable impairment that amounted to a listed impairment.  (Record at 31-32.)

The ALJ considered the testimony of Garcia and Rothenberg, and, consistent with Rosa, 168

F.3d at 79, the administrative record contains extensive medical evidence concerning A.A.C.'s

condition and development.  (Docket # 9.)  The record therefore supports the conclusion that

Garcia received a full and fair hearing.

        This Court also concludes that the ALJ's findings are supported by substantial

evidence, and that the ALJ applied the correct legal standard to Garcia's claims.

        First, the ALJ found that A.A.C. had not engaged in substantial gainful activity

since August 15, 2011, which was the date of his SSI application.  (Record at 15.)  This

determination was required by 20 C.F.R. § 416.924(b), and was consistent with evidence in the administrative record.

Second, consistent with 20 C.F.R. § 416.924(c), the ALJ found that A.A.C. had an impairment of mild hydrocephalus and post-occipital encephalocele. (Record at 15.) The ALJ noted that the encephalocele contained only fibrous tissue, with no nerve material, and that Whitehead reported that A.A.C. had normal cognitive function and no abnormalities with moving or walking. (Record at 15.) MRIs showed hydrocephalus, which was being monitored. (Record at 15.) "Otherwise, the claimant consistently presented normal physical examinations during his first 18 months." (Record at 15.) The ALJ noted Garcia's testimony that A.A.C. had speech delays and a lazy left eye, "but the treatment record does not reflect these delays." (Record at 16.)

Third, the ALJ found that, despite the presence of mild hydrocephalus and post-occipital encephalocele, A.A.C. did not have an impairment, or combination of impairments, that met or equaled the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, at listings 111.06 and 111.08. (Record at 16.) Listing 111.06 covers motor dysfunction due to neurological disorder, and applies if there is "[p]ersistent disorganization or deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of: A. Fine and gross movements; or B. Gait and station." Listing 111.08 applies if an individual suffers from meningomyelocele "and related disorders," with symptoms including those set forth at Listing 111.06; less-severe motor dysfunctions coupled with an additional disorder; extremity involvement; or hydrocephalus that produces interference with mental or motor development. The ALJ noted that Rothenberg considered the two listings, and testified that A.A.C.'s

hydrocephalus did not meet the criteria for any listing. (Record at 16.) The ALJ separately found that A.A.C.'s impairment did not result in motor dysfunction or markedly limiting symptoms under the listings. (Record at 16.) These findings by the ALJ were consistent with the medical record reflecting A.A.C.'s treatment history, as well as the opinion of Rothenberg, who testified that "we don't have any motor dysfunction" in the case of A.A.C. (Record at 47.)

The ALJ also found that A.A.C. did not have an impairment, or combination of impairments under 20 C.F.R. § 416.926a(b)(1)(i)-(vi), that rose to the severity of being functionally disabled. The ALJ considered whether the child suffered from medically discernable physical or mental impairments, and "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (Record at 17.) He summarized the testimony of Rothenberg and the conclusions of Tenorio, noting that "[g]reat weight is given to Dr. Tenorio's opinions and to her treatment notes." (Record at 17.) The ALJ also affored "[g]reat weight" to Rothenberg's testimony, noting that he is a fellow on the American Board of Pediatrics familiar with the definitions of disability under the Social Security Act, that Rothenberg was familiar with the medical record, and that his views were consistent with those of Whitehead. (Record at 17.)

The ALJ reviewed the six areas of functioning set forth at 20 C.F.R. § 416.926a(b)(1). He found that A.A.C. had no limitation in 1.) acquiring and using information, 2.) attending and completing tasks, 3.) interacting and relating to others, 4.) moving and manipulating objects, or 5.) caring for his personal needs. (Record at 18-21.) He found a "less than marked limitation" in A.A.C's health and well-being. (Record at 18, 22.) For each area of functioning, the ALJ carefully reviewed governing regulations before reaching his conclusions as to A.A.C.'s condition. (Record at 18-22.) The ALJ's findings were consistent with the expert

testimony of Rothenberg, as well as the conclusions of Randall following review of A.A.C.'s medical records. (Record at 41, 159-63.) As previously discussed, physicians who treated A.A.C. also believed that the child's development was age-appropriate and healthy in most respects, including Tenorio's conclusion that A.A.C. had no neurological deficits.

As to A.A.C.'s health and physical well-being, the ALJ concluded that the child's condition was "less than marked." (Record at 22.) In evaluating this factor, the ALJ considered the cumulative effect of any impairments and their treatments on A.A.C.'s functioning. See 20 C.F.R. § 416.926a(*l*). A non-exclusive list of considerations is set forth by regulation. 20 C.F.R. § 416.926a(*l*)(4). The ALJ's conclusion was supported by the testimony of Rothenberg, who opined that the state of A.A.C.'s health and well-being was "less than marked," noting that the child was being monitored for hydrocephalus but had not experienced functional or developmental limitations. (Record at 41-42.) Randall reached the same conclusion based on his review of the record. (Record at 159-63.) As discussed, the physicians who treated A.A.C. did not diagnose him with developmental or cognitive impairments.

The Court therefore concludes that Garcia received a full and fair hearing, the Commissioner's denial of SSI benefits was supported by substantial evidence, and was based on the correct application of legal standards.

CONCLUSION

For the foregoing reasons, the defendant's motion for judgment on the pleadings is GRANTED. The Clerk is directed to enter judgment for the defendant and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
     October 9, 2014